```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WILLIAM CABAN,

                          Plaintiff,                Supplemental
                                                    Memorandum & Order
         -against-                                  10-CV-00389 (SMG)

EMPLOYEES SECURITY FUND OF THE
ELECTRICAL PRODUCTS INDUSTRIES
PENSION PLAN and THE PENSION TRUST
FUND OF THE PENSION, HOSPITALIZATION
AND BENEFIT PLAN OF THE ELECTRICAL
INDUSTRY

                          Defendants.
-------------------------------------------------------------X
GOLD, S., U.S.M.J.:
```

## INTRODUCTION

Plaintiff William Caban worked as an electrician for several years before he sustained a disabling injury in 2005. Caban has been awarded a disability pension from a fund administered by the Joint Industry Board of the Electrical Industry. Caban brings this action pursuant to ERISA, 29 U.S.C. § 1132, claiming for a variety of reasons that he is entitled to a larger monthly pension payable at an earlier date than it commenced.

I issued a Memorandum and Order on April 28, 2014 granting summary judgment to defendants with respect to most of Caban's contentions. Memorandum and Order ("Order"), Docket Entry 51. I did not, however, reach certain questions about how the amount of Caban's pension was calculated. More specifically, I denied summary judgment with respect to two issues: first, whether plaintiff worked continuously during a period of time material to the determination of one or more relevant pension credit rates, and second, whether plaintiff was receiving a rate of pay immediately before his breaks in service that was higher than the rate attributed to him by defendants. Order at 24.

Because I concluded that the parties' submissions did not adequately address these issues, I offered them the opportunity to submit further briefing. Plaintiff submitted an additional memorandum of law, Docket Entry 55 ("Pl. Supp. Mem."), and affidavit, Docket Entry 56 ("Caban Supp. Aff."), and defendants responded in kind, filing a memorandum of law, Docket Entry 57 ("Def. Supp. Mem.") and declaration, Docket Entry 58 ("DeChiara Supp. Decl."). Plaintiff then submitted a reply, Docket Entry 61 ("Pl. Supp. Reply Mem."). Because plaintiff's submissions raised new issues, I entered an Order affording defendants the opportunity for further briefing and directed them to address several specific questions. Docket Entry 65. Defendants then submitted another memorandum of law, Docket Entry 66 ("Def. Supp. Reply Mem.") and declaration, Docket Entry 67 ("Chanzis Supp. Reply Decl."). Having considered the extensive briefing submitted by the parties, and for the reasons stated below, defendants' motion for summary judgment is now granted in its entirety.

**DISCUSSION**

As indicated above, the only questions left unresolved by the Memorandum and Order issued on April 28, 2014 were whether plaintiff worked more years or earned higher wages than acknowledged by defendants and, if so, whether that additional work or pay would have affected the amount of plaintiff's pension. Plaintiff's supplemental submissions fail to raise a material question of fact with respect to either issue.

A. *Plaintiff's Work History*

Plaintiff first points out that my Order of April 28, 2014 incorrectly stated that he did not work from 1984 to 1998. Order at 24.[1] Plaintiff asserts that he was in fact employed by the Neo

---

[1] My Order references Plaintiff's Exhibit B, Docket Entry 43-6 at 28-32, as the source of its statement that plaintiff was not employed from 1984 through 1998. That exhibit appears at first to list plaintiff's work history in chronological order and, when read that way, indicates a gap in employment from 1984 to 1998. Pl. Ex. B. at 2. A closer reading of the exhibit, however, reveals that plaintiff does list employment by Neo Ray for four unspecified

Ray Corporation for four of those fourteen years, from 1984 through 1988. Caban Supp. Aff. ¶ 3. However, plaintiff does not demonstrate or even contend that this inaccuracy affected the calculation of his pension. To the contrary, plaintiff's employment from 1984 through 1988 is undisputed, and it is clear that defendants took his employment during those years into account when determining his pension amount. Pension Worksheet, Defs. Ex. A, Docket Entry 39-1 at 2.

### B. The Sixth Amendment to the PTF Plan

Plaintiff's second argument is that defendants relied on pension plan provisions that had already been amended when they calculated his pension benefits. As discussed at length in the Order, defendants determined the amount of plaintiff's pension pursuant to the terms of the Pension, Hospitalization and Benefit Plan of the Electrical Industry, or the "PTF Plan." Plaintiff applied for his pension in 2007, and defendants notified him in 2012 that he was eligible for a disability pension effective as of July 1, 2007. Order at 5. Plaintiff contends that Sections 4.07 and 4.09 of the PTF Plan were amended in 2002, but that defendants relied upon earlier versions of these sections when they calculated the amount of his pension benefit. According to plaintiff, application of the amended provisions, part of the Sixth Amendment to the PTF Plan, would have resulted in a substantially higher pension amount. Defendants counter that the amendments had not yet been adopted at the time plaintiff applied for his pension and that, even if they had been, their application to plaintiff's benefit calculation would not have changed the amount of the pension he was awarded.

Plaintiff's contention that the Sixth Amendment to the plan came into effect in 2002 is based in part on the cover sheet and preamble included with the version of the plan submitted by defendants as part of their original motion papers. Pl. Supp. Reply Mem. at 2 *et seq*. As plaintiff correctly notes, the cover sheet of the PTF Plan as submitted by defendants includes the notation,

---

years between 1970 and 1988. Pl. Ex. B at 1.

3

"Amended effective October 1, 2002 except as otherwise indicated." Defs. Ex. F at D-189, Docket Entry 39-1 at 20. The plan's preamble likewise states that "[t]he following document contains the provisions of the . . . [Plan] as amended as of October 1, 2002 and restated effective Janaury 1, 1997." Defs. Ex. F at D-191, Docket Entry 39-1 at 22. The pages that follow, however, clearly comprise a complete version of the plan, as well as *eleven* sets of amendments.[2] Some of the amendments are dated; the eleventh amendment, for example, is dated February 24, 2010. Defs. Ex. F at D-287, Docket Entry 39-1 at 118. The references to the year 2002 in the preamble and cover sheet relied upon by plaintiff thus plainly do not refer to the attached amendments.

The Sixth Amendment to the PTF Plan is undated and unsigned. Defs. Ex. F at D-270, Docket Entry 39-1 at 101. However, defendants have submitted the declaration of the Joint Industry Board's Director of Administration, Mark Chanzis, in which Chanzis asserts that the Sixth Amendment was adopted on December 19, 2007. Chanzis Supp. Reply Decl. ¶ 8. Defendants have also submitted the minutes of a meeting of the Joint Board's Pension Committee held on December 19, 2007, reflecting the Committee's approval of the Sixth Amendment to the Plan on that date. DeChiara Supp. Decl. Ex. A. Plaintiff does not counter this showing with any admissible evidence suggesting that the Sixth Amendment was adopted on an earlier date. Plaintiff has thus failed to raise a material question of fact with respect to whether the Sixth Amendment was in effect at the time he applied for a disability pension.

Plaintiff argues in the alternative, however, that defendants should have applied the terms of the Sixth Amendment even if it was not adopted until December 19, 2007, because defendants did not approve his pension application until after that date. Plaintiff does not explain, however,

---

[2] The full version of the Plan is found at Defs. Ex. F at D-189 - D-244, Docket Entry 39-1 at 20-75. The eleven amendments are found at Defs. Ex. F at D-245 - D-287, Docket Entry 39-1 at 76-118.

4

why it was arbitrary or capricious for defendants to apply the version of the plan in effect when plaintiff applied for his pension, and not amendments adopted later, when determining the amount of plaintiff's pension benefit.

The parties' dispute over whether the Sixth Amendment should have been applied turns out in any event to be immaterial because plaintiff would not have been entitled to a larger pension benefit than the one he was awarded even if his pension amount had been calculated pursuant to the terms of the Sixth Amendment to the Plan. It is undisputed that plaintiff had a break in service from 1988 through 1998. Plaintiff also failed to earn vesting service from 1999 through 2002. Pension Worksheet, Defs. Ex. A, Docket Entry 39-1 at 2. Because of these breaks in service, defendants determined plaintiff's pension credit rates for the years prior to his service breaks to be lower than they would have been had he worked continuously from 1984 to 2005. Although plaintiff contends that application of the Sixth Amendment to the Plan would have resulted in higher pension credit rates for the years prior to his breaks in service, he is not correct.

The valuation of pension credits earned before a break in service is governed by Section 4.07 of the Plan. The version of Section 4.07 applied by defendants when calculating plaintiff's pension bears the heading "Pension Credit Rate Following Absence from Covered Employment" and reads as follows:

> (a)   The Pension Credit Rate applicable to each Pension Credit earned after one or more consecutive years in which the Participant fails to earn a Year of Vesting Service ("Absence") is the Pension Credit Rate in effect at the time of such reemployment. The applicable Pension Credit Rate for a Participant's Pension Credits preceding an Absence shall be determined as follows:
>
> > (I)   If a Participant has an Absence of two or more consecutive years, the Pension Credit Rate in effect on the date of final separation from Covered Employment shall be applied to his Pension Credits before the Absence only if a) his number of years of reemployment exceeds the

5

number of years of his Absence, and b) he earns two consecutive Years of Vesting Service and works at least 3,000 straight time hours within the first two years of reemployment following the Absence.

(II)  If a Participant has an Absence of less than two consecutive years, the Pension Credit Rate in effect on the date of final separation from Covered Employment shall be applied to his Pension Credits before the Absence only if he earns two Years of Vesting Service and works at least 3,000 straight time hours within the first two years following the Absence.

(III)  If a Participant does not satisfy the reemployment service requirements of (i) or (ii), the Pension Credit Rate applicable to the Pension Credits before the Absence will be the Rate in effect at the commencement of the Absence.

Defs. Ex. F at D-215 - D-216, Docket Entry 39-1 at 46-47. This version of Section 4.07 thus provides that a participant who fails to earn a year of Vesting Service is entitled to have the current pension credit rate apply to his earlier employment only if he is reemployed for more years than he was absent and worked at least 3,000 hours during his first two years of reemployment. Caban, as noted above, did not earn Vesting Service from 1988 through 1998, and then earned only a single year of Vesting Service. Pension Work Sheet. After failing to earn Vesting Service for another four years, from 1999 through 2002, Caban was reemployed for three years. Pension Work Sheet. Because Caban was in neither case reemployed for more years than he was absent, the Pension Credit Rate applicable to the Pension Credits he earned before his absences is the rate that was in effect when each absence began. PTF Plan Section 4.07(a)(III).

The same result would obtain even under the Sixth Amendment to the Plan. The relevant provision of the Sixth Amendment altered Section 4.07 as follows:

Section 4.07 of the Plan is hereby restated in its entirety to read as follows: "In general, subject to Section 4.09, the Pension Credit Rate applicable to a Participant's Pension Credits will be the Pension Credit Rate in effect when the Participant retires, dies, becomes disabled or otherwise ceases to work for a Contributing Employer. If, however, a Participant fails to earn

6

> a Year of Vesting Service, the Pension Credit Rate in effect on the date of
> the Participant's final separation from Covered Employment or
> Contiguous Employment will not apply to his Pension Credits preceding
> the year(s) in which he did not earn a Year of Vesting Service, unless (1)
> the Participant thereafter earns at least two Years of Vesting Service or, if
> the Participant failed to earn more than two Years of Vesting Service, the
> Participant earns thereafter that number of Years of Vesting Service, and
> (2) the Participant earns two consecutive Years of Vesting Service and
> works at least 3,000 straight-time hours in the first two years immediately
> following the year or years in which he did not earn Vesting Service. If
> the Participant does not satisfy the employment service requirement of the
> preceding sentence, or if the Pension Credit Rate when the Participant
> again earns a year of Vesting Service is less than the Pension Credit Rate
> applicable to any prior period of service, the Pension Credit Rate
> applicable to the Participant's previously earned Pension Credits will be
> the Rate in effect when he last earned a Year of Vesting Service.

Defs. Ex. F at D-266 - D-267, Docket Entry 39-1 at 97-98. As in the earlier version, a Participant must earn more years of Vesting Service after an absence than the number of years he was absent for the current Pension Credit Rate, rather than the earlier one, to apply to his earlier Vesting Service years ("if the Participant failed to earn more than two Years of Vesting Service, the Participant [must] earn[] thereafter that number of Years of Vesting Service"). As noted above with respect to both of Caban's breaks in service, his post-break years of Vesting Service did not in either case exceed his years of absence. Accordingly, Caban would not have received a larger pension even if the Sixth Amendment's version of Section 4.07 had been applied when his pension benefit was calculated.

Plaintiff also attempts to argue that an amendment to Section 4.09 of the Plan should have resulted in a more favorable pension benefit calculation. Before the Sixth Amendment, Section 4.09 of the Plan was headed "Pension Credit Rate for Pre-1989 Service" and read, "Notwithstanding the foregoing, the Pension Credit Rate for a participant who separated from covered Employment before June 9, 1989 shall be $8.50." Defs. Ex. F at D-216, Docket Entry

7

39-1 at 47. The Sixth Amendment of the Plan revised the text of this section to read, "Notwithstanding the foregoing, the Pension Credit Rate for a Participant *who has not yet begun to receive a pension* and who separated from Covered Employment *or Contiguous Employment* before June 9, 1989 shall be $8.50." Defs. Ex. F. at 2-267 (emphasis added), Docket Entry 39-1 at 98. The term "Contiguous Employment" refers to "work[] for any Contributing Employer in a job not covered by the Collective Bargaining Agreement" that "immediately precedes or follows . . . Covered Employment." Plan Section 2.04(b), Defs. Ex. F at D-202, Docket Entry 39-1 at 33. Plaintiff did not separate from Covered or Contiguous Employment prior to 1989; to the contrary, he had additional Covered Employment in 1998 and from 2003 through 2005. Accordingly, neither version of Section 4.09 is relevant to the issues in this case.

For the reasons stated above, the Sixth Amendment to the PTF Plan does not apply to the calculation of plaintiff's pension benefit and, even if it did, would not affect that calculation.

### C. Calculation of Plaintiff's Pension Benefit

Plaintiff continues to press his argument that defendants have miscalculated the amount of his disability pension benefit. Pl. Supp. Mem. at 6, citing plaintiff's original Memorandum of Law, Docket Entry 43-5, at 46-48. Plaintiff's calculations are set forth in detail on those pages of his original memorandum. Defendants' calculations are summarized, among other places, in their Supplemental Reply Memorandum at 7.

The parties each calculate the plaintiff's pension benefit amount by applying the formula set forth in Section 4.05 of the PTF Plan. There are two major discrepancies in their calculations, however. First, one of the variables in the formula is the applicable pension credit rate for employees receiving the "A" rate of pay during the years 2003 through 2005. Defendants assert that this figure is $65 and cite as support, among other plan sections, Section

8

4.01(d). Def. Supp. Reply Mem. at 7. Indeed, Section 4.01(d) of the Plan provides for the $65 figure relied upon by defendants in their calculations. Defs. Ex. F at D-210 - D-211, Docket Entry 39-1 at 41-42. Plaintiff contends that the applicable pension credit rate should be $80 and not $65. Pl. Mem. at 47. Plaintiff does not cite to any plan provision that provides for this higher rate. It seems that plaintiff may be relying upon the Sixth Amendment to the Plan, which does amend Section 4.01(b) of the Plan to provide for a pension credit rate of $80. The relevant portion of the amendment states, however, that the $80 rate applies to "Participants who separate from Covered Employment on or after June 1, 2007." Defs. Ex. F at D-264, Docket Entry 39-1 at 95. It is undisputed that plaintiff separated from covered employment in 2005. Thus, defendants properly applied a $65 pension credit rate when determining the amount of plaintiff's pension benefit.

The second major discrepancy between the parties' calculations concerns the employer contribution rates for "M" and "A" journeypersons. These contribution rates are also variables in the formula set forth in Plan Section 4.05. Plaintiff asserts that the contribution rates for M and A journeypersons were the same, but does not cite any authority for his assertion. Defendants assert that the contribution rate for M journeypersons was 17.05% in 2005, and that the contribution rate for "A" journeypersons was at that time 27.61%. Defendants cite to the relevant collective bargaining agreement, dated May 13, 2004, Defs. Ex. J at D-347, Docket Entry 39-1 at 133, and a Memorandum dated May of 2005, Chanzis Supp. Reply Decl. Ex. J, Docket Entry 67 at 87, where these contribution rates are set forth.

For these reasons, plaintiff has failed to raise a material question of fact with respect to whether defendants arbitrarily and capriciously miscalculated the amount of plaintiff's disability pension.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in all respects. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
November 18, 2014

U:\CG 2013-2014\Caban 10-CV-00389\Caban - 2d M&O Final 111814.docx