UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
WILLIAM CABAN,

                       Plaintiff,

    -against-

EMPLOYEE SECURITY FUND OF THE
ELECTRICAL PRODUCTS INDUSTRIES
PENSION PLAN, and PENSION TRUST FUND OF
THE PENSION HOSPITALIZATION AND
BENEFIT PLAN OF THE ELECTRICAL
INDUSTRY,

                       Defendants.
------------------------------------------------------------ x

MEMORANDUM
& ORDER
10-CV-389 (SMG)

GOLD, S., *U.S. MAGISTRATE JUDGE:*

## INTRODUCTION

This action is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), against two pension funds administered by the Joint Industry Board of the Electrical Industry ("Joint Board"): the Employees Security Fund of the Electrical Products Industries Pension Plan ("ESF") and the Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Electrical Industry ("PTF"). The underlying facts and procedural history of the litigation are set forth in two prior decisions of this Court, Docket Entries 51 and 68, and a Summary Order issued by the Second Circuit, 2015 WL 6684688 (2d Cir. Nov. 3, 2015). Plaintiff now moves for an award of attorney's fees and pre-judgment interest.

## FACTS

Plaintiff, William Caban, was an electrical worker and a member of Local 3 of the International Brotherhood of Electrical Workers. Caban sustained a disabling injury while

working on June 24, 2005. Caban applied for a disability pension, but his application was denied in 2009 on the ground that he lacked sufficient work credits for eligibility. Docket Entry 51 at 4-5. In January 2010, Caban commenced this lawsuit. The parties consented to the exercise of jurisdiction by a United States Magistrate Judge in December 2011. Docket Entry 18.

Plaintiff's original complaint was brought against the ESF. However, during the course of discovery, plaintiff learned that he might be eligible for a disability pension from a related entity, the PTF. This occurred when Marsha Collock, an administrator of the defendant plans, was deposed on December 8, 2010. Collock testified that the ESF and PTF have reciprocal agreements whereby pension credits may be combined, and that when participants apply for benefits, they are considered under both plans. Pl. Summ. J. Mem. Ex. AA at 47-48, 56-57, Docket Entry 43-10.[1] However, Collock acknowledged that Caban's August 2009 appeal from the decision to deny him a disability pension was considered only under the ESF plan because Caban did not appeal to the PTF. Pl. Summ. J. Mem. Ex. AA at 85. Further, the Joint Board did not contact Caban to tell him that no appeal had been filed with respect to his eligibility for benefits under the PTF plan. Pl. Summ. J. Mem. Ex. AA at 88. Collock also testified that, as a result of Caban's lawsuit, the Joint Board reviewed documents and discovered that Caban had

---

[1] The parties' submissions are cited throughout as follows: Plaintiff's initial complaint (Docket Entry 1) is referred to as "Compl." Plaintiff's amended complaint (Docket Entry 12) is referred to as "Am. Compl." Defendants' memorandum in support of its summary judgment motion (Docket Entry 40) is "Defs. Summ. J. Mem." The declaration of Mark Chanzis in support of defendants' summary judgment motion (Docket Entry 39) is "Chanzis Decl." Defendants' Rule 56.1 Statement (Docket Entry 38-1) is "Defs. R. 56.1." Plaintiff's memorandum in opposition to defendants' motion for summary judgment and in support his cross motion for summary judgment (Docket Entry 43-5) is "Pl. Summ. J. Mem." Exhibits supporting plaintiff's summary judgment motion (Docket Entries 43-6 to 43-11) are referred to as "Pl. Summ. J. Mem. Ex." followed by the letter(s) of the exhibit. Plaintiff's Rule 56.1 Statement (Docket Entry 43-4) is "Pl. R. 56.1." Plaintiff's memorandum in support of his motion for attorney's fees (Docket Entry 72-10) is "Pl. Mem. in Support." Noah A. Kinigstein's declaration in support of plaintiff's motion for attorney's fees (Docket Entry 72-1) is "Kinigstein Decl." Plaintiff's itemized bills in support of his motion for attorney's fees (Docket Entries 72-2, 80-1) are referred to, respectively, as "Item. Bill" and "Supp. Item. Bill." Plaintiff's affidavit in support of his motion for attorney's fees (Docket Entry 81) is "Pl. Aff. in Support." Plaintiff's reply in support of his motion for attorney's fees (Docket Entry 82) is "Pl. Reply Mem." Jeffrey A. Rothman's affirmation in support of attorney's fees (Docket Entry 73-1) is "Rothman Affirm." Defendants' memorandum in opposition to plaintiff's attorney's fees motion (Docket Entry 78) is "Defs. Mem. in Opp."

two additional pension credits as a result of work he performed in the 1980s that had not previously been considered. Pl. Summ. J. Mem. Ex. AA at 97-98.

On July 5, 2011, plaintiff filed an amended complaint naming the PTF as an additional defendant. According to an affidavit submitted by Mark Chanzis, the Director of Administration for the Joint Industry Board of the Electrical Industry, defendants reviewed plaintiff's eligibility again in late 2011 and concluded that he was entitled to a disability pension after all. Chanzis Decl. ¶¶ 9, 11. The PTF Plan notified Caban of its determination on February 29, 2012. Chanzis Decl. ¶ 12. Plaintiff appealed the amount and inception date determined by defendant and was advised that his appeal was denied on July 24, 2012. Chanzis Decl. ¶ 17. Plaintiff then continued this litigation, challenging the amount and other aspects of the disability pension that he was awarded. Plaintiff's claims were ultimately dismissed on summary judgment, which dismissal was affirmed on appeal.

Plaintiff now moves for attorney's fees, contending that the disability pension he was awarded after deposing Collock and filing an amended complaint demonstrates that he achieved a degree of success on the merits in this lawsuit. Plaintiff also seeks interest because of the delay in awarding him a pension. In support of the motion, plaintiff's counsel, Noah A. Kinigstein, has submitted a memorandum of law, an affidavit, time records reflecting his work on the case, and documents relating to Caban's eligibility for a disability benefit and the denial of his appeal. *See* Docket Entry 72. Defendants have filed a memorandum and exhibits in opposition to Caban's motion for attorney's fees and interest. Defs. Mem in Opp., Docket Entry 78. Defendants argue that plaintiff is not eligible for attorney's fees or interest, and that, if the Court does award fees, those fees should be limited and reduced. For the reasons stated below, I award attorney's fees in the amount of $126,400 and deny plaintiff's motion for an award of pre-judgment interest.

## DISCUSSION

**I. Standard for Awarding Attorney's Fees in an ERISA Case**

Under ERISA's fee-shifting provision, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has held that Section 1132(g)(1) "does not limit the availability of attorney's fees to the 'prevailing party.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010). Rather, a court may award reasonable fees and costs, "as long as the fee claimant has achieved 'some degree of success on the merits.'" *Id.* at 245 (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694 (1983)).

Prior to the decision in *Hardt*, courts applied a five-factor test when deciding whether to award attorney's fees in ERISA cases, examining:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987). But in *Hardt*, the Supreme Court held that, "[b]ecause these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section." 560 U.S. at 254-55. Although a court may consider the five *Chambless* factors, the sole factor that a court must consider, and the sole factor that this Court does consider, is whether the claimant achieved some success on the merits. *Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 46 (2d Cir. 2014); *see also Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110 (2d Cir. 2011) ("A court may apply—but is not required to apply—the *Chambless* factors . . . .").

The Court in *Hardt* did not explicitly define what it means to achieve "some degree of success on the merits," but "many factual scenarios [may] satisfy the standard." *Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 152 (2d Cir. 2013). Thus, a party may have achieved some success on the merits when it obtains the relief it sought with respect to a particular substantive claim, regardless of the means by which that result was achieved. *Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 542 (S.D.N.Y. 2011). Fees might properly be awarded, for example, when a lawsuit forces a defendant to abandon an unlawful practice, even in the absence of a formal court order. *Scarangella*, 731 F.3d at 154 (citing *Ruckelshaus*, 463 U.S. at 687 n.8). Likewise, prevailing through a settlement rather than through litigation does not weaken a claim for fees. *Taaffe*, 769 F. Supp. 2d at 541-42 (citing *Maher v. Gagne*, 448 U.S. 122, 126 n.8, 129 (1980)). However, a claimant who only achieves "trivial success" or a "purely procedural victor[y]" does not satisfy the standard. *Hardt*, 560 U.S. at 255 (quoting *Ruckelshaus*, 463 U.S. at 688 n.9). Further, a claimant who "obtains relief due to the voluntary conduct of another party after minimal litigation . . . is unlikely to succeed in demonstrating that the impetus for the relief was some action by the court related to the merits of the case." *Scarangella*, 731 F.3d at 155.

Defendants, relying on *Scarangella*, argue that plaintiff did not achieve any success on the merits because there was no action by the Court that provided the "impetus" for the decision to afford him a disability pension. Defs. Mem. in Opp. at 6-7. Defendants further contend that, because their motion for summary judgment was granted in all respects, plaintiff has had "zero success on the merits," and is therefore not entitled to attorney's fees. Defs. Mem. in Opp. at 6. I am not persuaded by defendants' arguments. Despite this Court's rulings against plaintiff on summary judgment, plaintiff did achieve the requisite degree of success on the merits to warrant an attorney's fees award.

5

Defendants are correct that the language of the Court's decision in *Scarangella* suggests that a plaintiff seeking attorney's fees under ERISA must demonstrate that the success he or she achieved was spurred by court action. However, *Scarangella* did not explicitly address the question of whether a plaintiff may recover fees based upon a successful outcome triggered by litigation, regardless of anything done by the court. Other courts have addressed that question, though, and have answered it affirmatively. For example, in *Templin v. Independence Blue Cross*, 785 F.3d 861 (3rd Cir. 2015), the Court reasoned as follows:

> To succeed under a catalyst theory of recovery, evidence that *judicial* activity encouraged the defendants to settle is not necessary. All that is necessary is that *litigation* activity pressured a defendant to settle or render to a plaintiff the requested relief. To hold otherwise ignores the distinction the Supreme Court drew in *Hardt* between statutes that award fees only to a prevailing party (which require some type of judicial action for an award of fees) and statutes, like ERISA, that do not limit the award in such a way.

785 F.3d at 866. Similar reasoning resulted in fee awards in *Taaffe* and *Pierorazio v. Thalle Construction Co.*, 2014 WL 3887185 (S.D.N.Y. June 26, 2014), where plaintiffs who reached favorable settlements shortly after filing their complaints and without court intervention were held to have achieved a degree of success on the merits, entitling them to attorney's fees. *Taaffe*, 769 F. Supp. 2d. at 535, 542; *Pierorazio*, 2014 WL 3887185 at *1, 3; *see also Broadbent v. Citigroup Long Term Disability Plan*, 2015 WL 1189565, at *4 (D.S.D. Mar. 16, 2015) (awarding fees after holding that fee awards are proper where "plaintiff's suit operated as a catalyst to bring about a voluntary change in the defendant's conduct").

Defendants do not dispute that plaintiff Caban obtained a disability pension benefit—the relief he sought when he brought this case—only because of steps he took in this litigation. Defs. Mem. in Opp. at 3. Those steps included taking depositions and filing an amended complaint. Substantial progress had been made in the litigation before defendants acknowledged

6

plaintiff's eligibility for a disability pension. Thus, I find that plaintiff achieved "some degree of success on the merits" and is entitled to an award of attorney's fees.

## II.     Reasonable Attorney's Fees and Costs

Having concluded that Caban is entitled to an award of fees, I now consider the amount of fees to award. "A determination of the appropriate award for attorney's fees rests soundly within the discretion of the district court." *Cement & Concrete Workers Dist. Council Welfare Fund v. Baroco Contracting Corp.*, 2009 WL 928331, at *7 (E.D.N.Y. Apr. 2, 2009). *See also Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 298 (2d Cir. 2004) (reviewing an attorney's fees award for abuse of discretion). Courts generally calculate attorney's fees under ERISA by multiplying the number of hours reasonably expended by a reasonable hourly rate. *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A reasonable hourly rate is one that reflects "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). The "novelty and complexity of a case" are generally accounted for in determining the reasonable number of hours billed by an attorney and, thus, "generally may not be used as a ground for an enhancement." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).

Plaintiff seeks to recover attorney's fees in the amount of $527,917.50 based on an hourly rate of $675 for 782.10 hours of work. Kinigstein Decl. ¶ 10; Item. Bill; Supp. Item. Bill. The burden is on the fee claimant to "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. Plaintiff's counsel has submitted the following documents to support the fee award request: two itemized bills detailing the hours he worked between June 5, 2009 and April 17, 2015 (Item. Bill, Supp. Item Bill), Docket Entries 72-2 and 80-1; a printout

7

of the "Laffey Matrix," Docket Entry 72-8; the 2012 National Law Journal published survey of prevailing market rates for attorneys ("NLJ Billing Survey"), Docket Entry 72-9; a declaration of plaintiff's counsel detailing his legal experience (Kinigstein Decl.), Docket Entry 72-1; an affirmation of plaintiff (Pl. Aff. in Support), Docket Entry 81; and an affirmation from another attorney supporting an hourly rate of $675 (Rothman Affirm.), Docket Entry 73-1. While plaintiff claims that the fee requested is reasonable given the complexity of his case and counsel's level of experience, defendants argue that an hourly rate of $675 is excessive, that some items for which fees are sought are unreasonable, and that any award of attorney's fees should be based only on those hours expended before July 24, 2012, when plaintiff was informed of his entitlement to a disability pension. Defs. Mem. in Opp. at 11-12.

A. **Hourly Rate**

Plaintiff's counsel states that his current hourly rate is $650 and that he seeks $675 per hour in this case due to its complexity. Kinigstein Decl. ¶ 10. In support of his request, Kinigstein points out that he has been practicing law for over thirty years, mostly as a solo practitioner, and that he has represented individuals in many areas of the law, including criminal law, discrimination law, and ERISA law. Kinigstein Decl. ¶¶ 5-6. Kinigstein emphasizes that this was a complicated case to litigate because it involved a unique fact pattern and required a detailed analysis of ERISA law. Pl. Reply Mem at 15. He notes that a great deal of time and effort was required to clarify the relevant parties, the rules of each pension plan, and the credits needed to obtain a benefit. Kinigstein Decl. ¶¶ 8, 10. In further support of his requested rate, Kinigstein has provided an affirmation from Jeffrey A. Rothman, an attorney who has represented plaintiffs in at least 135 civil rights cases. Rothman Affirm. ¶¶ 2, 4. Rothman states that that he has observed Kinigstein while on trial, is familiar with his skills and experience, and

8

believes that an hourly rate of $675 is reasonable. Rothman Affirm. ¶¶ 9, 12. Kinigstein has also provided copies of the Laffey Matrix and the NLJ Billing Survey to support his requested fee. Docket Entries 72-8, 72-9.

Kinigstein seeks an hourly rate based on prevailing rates in the Southern District of New York. Pl. Reply Mem. at 10, 13. The reasonableness of an hourly rate, though, is evaluated in reference to the prevailing hourly rate in the community where the district court sits. *Arbor Hill*, 522 F.3d at 190. The Second Circuit has explained "that a district court may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Id.* at 191. This deviation from the standard "forum rule" reflects that legal communities are interconnected and that "defin[ing] markets simply by geography is too simplistic." *Id.* at 192. But a party seeking an award based on rates from another district must overcome a presumption in favor of forum rates and "persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009). This may be done by demonstrating, for example, that no local counsel possessed the requisite expertise to handle the case. *Id*. at 176.

Kinigstein contends that this case presents an exception to the forum rule for two reasons. First, the frequency with which clients from the Eastern District hire attorneys from Manhattan suggests that it was reasonable for Caban to do so as well. Pl. Reply Mem at 11-12. Second, Caban contends that when he researched attorneys on the Internet in 2009, he was unable to find one in Brooklyn or Queens that advertised experience with pension law, and that he therefore traveled to Manhattan to find a lawyer to represent him. Pl. Aff. in Support ¶ 2.

9

Kinigstein further claims that $675 is a reasonable hourly rate for an attorney in the Southern District of New York, Pl. Mem. in Support at 9, noting that "rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600" and citing, among other cases, *DeCurtis v. Upward Bound Int'l, Inc.*, 2011 WL 4549412, at *8 (S.D.N.Y. Sept. 27, 2011) (internal quotation marks and citations omitted). Indeed, rates as high as $600 have been approved. *See Levitian v. Sun Life & Health Ins. Co. (U.S.)*, 2013 WL 3829623, at *8 (S.D.N.Y. July 24, 2013) (awarding $600 per hour to an attorney with nearly twenty years of experience who focuses his practice on ERISA litigation). In *Levitian*, though, the attorney awarded $600 per hour was a senior lawyer who was assisted in litigating the action by two associates. *Id*. Here, Kinigstein litigated the entire action himself, and the prevailing hourly rate for an attorney in a small firm handling ERISA matters in the Southern District of New York generally falls between $250 and $450. *Watkins v. Smith*, 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) (collecting cases); *see also Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, 2014 WL 2624759, at *7 (S.D.N.Y. June 10, 2014) (collecting cases).

I also agree with defendants that the Laffey Matrix and NLJ Billing Survey do not support an increase in the fee award. The Laffey Matrix concerns fees for the District of Columbia and is not relevant to fees in either the Eastern or Southern Districts of New York. *See Baruch v. Healthcare Receivable Mgmt., Inc.*, 2007 WL 3232090, at *5 n.12 (E.D.N.Y. Oct. 30, 2007) ("The Laffey Matrix . . . has not been adopted, or even cited with approval, by any court in [the Second] Circuit."). The NLJ survey is an inappropriate guide here because it specifically compiles billing rates for the nation's largest law firms.[2] *See Pugach v. M & T Mortgage Corp.*,

---

[2] The most recent NLJ Law Firm Billing Survey, compiled by ALM Legal Intelligence, includes rates for 159 of the 350 largest law firms in the nation. *See Billing Rates Across the Country*, Nat'l Law J., Jan. 13, 2014, http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country?slreturn=20150607114314.

564 F. Supp. 2d 153, 157 (E.D.N.Y. 2008) (noting that the 2006 NLJ Billing Survey summarized rates for 250 of the largest law firms in the United States).

Although typically "rates for attorneys are not as high in [the Eastern District] as they are in the Southern District, where the legal market differs," the difference is not stark; courts in the Eastern District generally approve hourly rates between $200 and $400 for partners in ERISA cases. *Barbu v. Life Ins. Co. of N. Am.*, 2015 WL 778325, at *3 (E.D.N.Y. Feb. 24, 2015) (collecting cases); *see also Ferrara v. Prof'l Pavers Corp.*, 2013 WL 1210522, at *8 (E.D.N.Y. Feb. 15, 2013) (noting that "reasonable hourly rates for this district range from $300-$450 per hour for partners"). Nevertheless, some courts have approved higher rates in the Eastern District, depending on the complexity of the case and the attorney's level of experience. *See Siracuse v. Program for the Dev. of Human Potential*, 2012 WL 1624291, at *29 (E.D.N.Y. Apr. 30, 2012) (collecting cases approving hourly rates between $400 and $540 for senior partners and lead trial counsel). Given the substantial overlap between the prevailing rates in both districts, I find it unnecessary to determine whether plaintiff has overcome the presumption in favor of application of the forum rule. Rather, I calculate a reasonable hourly rate consistent with those awarded in both districts based on the documents submitted, the complexity of the case, the small size of Kinigstein's firm and the resulting inference that much of his time was spent on tasks a junior lawyer could perform, and Kinigstein's experience with ERISA matters. *See Siracuse*, 2012 WL 1624291, at *30 ("[I]t is clear that the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys.").

While this case was not as straightforward as some, it was not so complicated as to warrant an hourly rate of $675. Nor was plaintiff's partial success attributable to Kinigstein's

mastery of the nuances of ERISA law or the fine details of the two pension plans at issue. Rather, Kinigstein's discovery demands and amended pleading caused *defendants* to reexamine their position and award plaintiff a disability pension. This case did not go to trial, but ended in summary judgment in defendants' favor, with the court rejecting each and every one of Kinigstein's arguments about how Caban's disability pension should have been calculated. And although Kinigstein has been practicing law for more than thirty years, even attorneys with decades of litigation experience are often awarded hourly rates lower than those they requested. *Mary Jo C. v. Dinapoli*, 2014 WL 7334863, at *6-*7 (E.D.N.Y. Dec. 18, 2014) (awarding fees at a rate of $350 per hour to an attorney with over thirty years of experience specializing in disabilities law). For all these reasons, I conclude that $400 per hour is a reasonable rate for the time Kinigstein spent litigating this case.

### B. Number of Hours Expended

Plaintiff seeks an award for 782.10 hours of attorney time, or for all of the work counsel performed from June 5, 2009 and April 17, 2015, including tasks related to seeking administrative remedies from defendants. *See* Kinigstein Decl. ¶ 10; Item. Bill; Supp. Item. Bill. A fee application must be supported by time records that are sufficiently detailed to permit a court to determine the reasonableness of the hours claimed. *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Penco United, LLC*, 2015 WL 1650960, at *4 (E.D.N.Y. Apr. 14, 2015) (citing *McDonald ex rel. Prendergast*, 450 F.3d at 96). A district court reviewing a fee application should exercise its discretion to exclude from its calculation of fees any hours not "reasonably expended." *Hensley*, 461 U.S. at

434;[3] *see McDonald ex rel. Prendergast*, 450 F.3d at 96. For example, and of particular pertinence here, "no fee may be awarded for services on the unsuccessful claim." *Sheet Metal Workers' Nat. Pension Fund v. Coverex Corporate Risk Solutions*, 2015 WL 3444896, at *13 (E.D.N.Y. May 28, 2015) (quoting *Hensley*, 461 U.S. at 435). "Likewise, fees should not be awarded for time expended on an unsuccessful motion." *Id.* at *13 (citing *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 427 (2d Cir. 1999)). The most critical factor in awarding attorney's fees is the "results obtained;" when a plaintiff achieves only partial success, a district court has the discretion to "reduce the [attorney's fees] award to account for the limited success." *Hensley*, 461 U.S. at 434, 436-37.

    i.    *Time Spent on Litigation*

Plaintiff contends that he is entitled to attorney's fees for all time spent from the beginning until the end of this litigation because his initial claim for a pension benefit shares "a common core of facts and/or legal theories" with his arguments about the amount of his pension and its commencement date. Pl. Reply Mem. at 7, relying on *Hensley*, 461 U.S. at 435 ("[When] plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories[,] . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."). Defendants contend that, if plaintiff is awarded fees at all, those fees should be limited to time spent before July 24, 2012, when defendants informed plaintiff of his entitlement to a disability pension beginning on a date and in an amount that this Court later determined to be correct. Defs. Mem. in Opp. at 11.

The Supreme Court in *Hensley* noted that, generally, it is appropriate to award fees for time spent on unsuccessful claims only when it is "difficult to divide the hours expended on a

---

[3] Though *Hensley* deals with attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, courts have applied the same standards when determining the reasonableness of fees sought pursuant to 29 U.S.C. § 1132(g)(1). *See Scarangella*, 731 F.3d at 156 n.14 (citing *Hensley*, 461 U.S. at 435 n.11).

claim-by-claim basis." 461 U.S. at 435. That is certainly not the case here. Plaintiff commenced this action to obtain a disability pension. After defendants advised plaintiff that they had reconsidered their original denial and were awarding him a disability pension, plaintiff continued to litigate, claiming he was entitled to a larger pension that commenced on an earlier date. Plaintiff's Letter dated October 23, 2012, Docket Entry 31. Plaintiff's claims were, without exception, rejected both by this Court in Orders dated April 28, 2014 and November 18, 2014, Docket Entries 51 and 68, and by the Second Circuit in a Summary Order dated November 3, 2015, reported at 2015 WL 6684688. Accordingly, there is no ambiguity about it: none of the time spent by plaintiff's counsel after July 24, 2012 achieved any degree of success for plaintiff whatsoever. I therefore conclude that plaintiff is entitled to a fee award based on attorney time spent through July 30, 2012, the date on which plaintiff's attorney notified this Court of the trustee's denial of plaintiff's appeal. Docket Entry 28.

According to his billing records, Docket Entry 72-2, plaintiff's counsel spent 386.95 hours on this case as of July 30, 2012. Defendants object to the number of hours claimed, arguing that Kinigstein charged his full hourly rate for travel time that should have been charged at half that amount, and that Kinigstein spent an unreasonable amount of time completing tasks such as reading cases and preparing documents. Defs. Mem. in Opp. at 18-20. In response, plaintiff argues that travel time should be fully compensable and that the hours listed performing legal work are reasonable and not inflated. Pl. Reply Mem. at 18-19. Having reviewed Kinigstein's time records for the period from June 5, 2009 through July 30, 2012, I find it reasonable to reduce some of the 386.95 hours included in that date range.

First, as a solo practitioner without support staff, Kinigstein performed all of his own work, Kinigstein Reply Affirm. ¶ 2, Docket Entry 80, but is not entitled to his regular hourly rate

for time spent on tasks that could have been assigned to an associate attorney, paralegal or administrative professional. *See Lee v. Santiago*, 2013 WL 4830951, at *7 (S.D.N.Y. Sept. 10, 2013) (awarding a solo practitioner the hourly rate for a paralegal for time spent serving and filing papers). Further, Kinigstein's documentation of his travel time indicates that he has not reduced those hours by half, as is the practice in this Circuit. *See Trustees of New York Oil Heating Ins. Fund v. Anchor Tank Lines Corp.*, 2011 WL 767162, at *5 (S.D.N.Y. Mar. 4, 2011) (collecting cases).

Additionally, some of Kinigstein's billing entries appear excessive. For example, Kinigstein's time records indicate he spent 12.50 hours drafting and filing an amended complaint, and approximately 24 hours preparing a Rule 56.1 statement.[4] The billing entries also occasionally contain "block-billing," such as the June 16, 2010 entry noting 3.5 hours for "Preparing file and travel to Cohen, Weiss, and Simon for discussions with Def'ts att'y," and the September 8, 2011 entry noting 6.5 hours for "Draft of Caban affidavit" and "telephone call with Peter Herman." Item. Bill at 3, 8. There are also some vague entries, such as those for time spent on document review, consultations, and phone calls, which do not contain further elaboration. *See, e.g.,* Item. Bill at 1, 3-5. Block-billing and vague descriptions make it difficult to determine the reasonableness of the time spent on particular tasks and warrant a reduction in attorney's fees. *See Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142-43 (E.D.N.Y. 2013) ("Where billing records include a large number of block-billed entries and there is an issue as to the reasonableness of the number of hours counsel spent on the matter, an across-the-board reduction in billing hours is appropriate.").

---

[4] Kinigstein included billing entries for the amended complaint on June 23, 2011, June 27-28, 2011, and July 5, 2011. Item. Bill at 7-8. He included billing entries for working on the 56.1 statement on August 16-18, 2011, September 6-7, 2011, November 2, 2011 and November 4, 2011. Item. Bill at 8, 10.

15

A percentage reduction is "a practical means of trimming fat from a fee application" and is a permissible way of reducing a fee award. *McDonald ex rel. Prendergast*, 450 F.3d at 96 (internal quotation marks and citations omitted). Here, it is appropriate to reduce plaintiff's billable hours by an across-the-board percentage of 33%. *See Barbu*, 2015 WL 778325, at *5 (citing cases that reduce fees by between 20% and 35% and concluding that a 33% across-the-board cut was necessary given that counsel's time entries were "impermissibly vague"); *see also McDonald ex rel. Prendergast*, 450 F.3d at 97 (holding that the district court did not abuse its discretion in reducing fees by 35%). After reducing the 386.95 hours included in the itemized bills by 33%, I calculate that fees should be awarded for 258 hours of work. At the reasonable rate of $400 per hour, the award thus totals $103,200.

      *ii.*      *Time Spent on Preparation of Attorney's Fees Motion*

Plaintiff also argues that he is entitled to fees for the time spent preparing this fee motion. Pl. Reply Mem. at 6. "It is settled that the time spent on a fee application is itself compensable." *Reiter v. Metro. Transp. Auth. of State of New York*, 2007 WL 2775144, at *18 (S.D.N.Y. Sept. 25, 2007); *see also, Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979) ("[T]ime reasonably spent by plaintiff's attorneys in establishing their fee would be compensable."). The district court has "great leeway" when awarding fees for time spent on the fee application; if the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly. *Gagne*, 594 F.2d at 344.

Kinigstein spent 86.75 hours on the motion for attorney's fees.[5] I reduce this number by 33% for some of the same reasons described above, and in particular because a fee application is the type of work typically assigned to a junior associate attorney with the assistance of a

---

[5] I determined this figure by examining the billing entries that plaintiff's counsel submitted and adding up the hours for tasks noted as "att'y fees" and related exhibits from November 25, 2014 to April 17, 2015. *See* Item. Bill at 20-21; Supp. Item. Bill.

16

paralegal. I thus conclude that plaintiff is entitled to fees for 58 hours of work on this fee application, for a total, at $400 per hour, of $23,200.

### III. Prejudgment Interest

Finally, plaintiff seeks interest on the disability pension payments he did not receive in a timely manner. The Second Circuit has held that ERISA authorizes an award of prejudgment interest to a successful ERISA claimant. *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 53 (2d Cir. 2009). Prejudgment interest may also be awarded where, as here, a defendant awards plaintiff the benefits he sued to obtain even without a judgment or court order having been entered. *Taaffe*, 769 F. Supp. 2d at 535-38.

The problem for plaintiff is that he did not timely move for an award of prejudgment interest. After granting defendant partial summary judgment on April 28, 2014, I directed the parties to submit further briefing with respect to the proper amount of plaintiff's pension. Docket Entry 51. Plaintiff then filed two memoranda of law, neither of which made any mention of prejudgment interest. Docket Entries 55 and 61. On November 18, 2014, I issued a Supplemental Memorandum and Order rejecting plaintiff's arguments, Docket Entry 68, and the Clerk entered a judgment terminating the case the following day. Docket Entry 69. On December 10, 2014, plaintiff filed a notice of appeal. Docket Entry 71. Then, on January 12, 2015, plaintiff filed his motion for attorney's fees, and moved as well, for the first time, for prejudgment interest.

"Ordinarily, the filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Gevorkyan v. Judelson*, 2015 WL 6508324, at *1 n.1 (S.D.N.Y. Oct. 20, 2015) (internal quotation marks, citations, and brackets omitted). Even after a notice of appeal is filed, a district

court retains ancillary jurisdiction to adjudicate "collateral matters such as attorney's fees." *Id*. However, "[t]he determination of damages is an integral part of the merits decision and not a collateral matter." *Garcia v. Burlington N. R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987). Of relevance here, "unlike attorney's fees, which at common law were regarded as an element of costs and therefore not part of the merits judgment, prejudgment interest traditionally has been considered part of the compensation due plaintiff." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989) (internal citation omitted). Accordingly, a district court may not award prejudgment interest where, as here, the matter is raised for the first time after a notice of appeal has been filed. *Garcia*, 818 F.2d at 722.

## CONCLUSION

For the reasons stated above, plaintiff's motion for attorney's fees is GRANTED in the amount of $126,400. Plaintiff's motion for an award of prejudgment interest is DENIED.

**SO ORDERED.**

/s/
STEVEN M. GOLD
United States Magistrate Judge

Dated:  Brooklyn, New York
November 23, 2015

U:\smg current docs\Caban Attorney's Fees 112315.docx